CITY OF NEWARK, PLAINTIFF IN ERROR, v. THE MOUNT PLEASANT CEMETERY COMPANY OF NEWARK, DEFENDANT IN ERROR.

1. A statute which deals with various matters will satisfy the provisions of article 4, section 7, paragraph 4 of the constitution, if it has one general object and the matters enacted tend to effectuate that object and are properly related to each other.

2. Under the title of the "Act to authorize the incorporation of rural cemetery associations and regulate cemeteries," approved April 9th, 1875, legislation looking to the exemption from public burdens of the property of cemetery corporations, incorporated under special laws, may be enacted.

3. The "Act authorizing the incorporation of rural cemetery associations," approved March 14th, 1851, by section 10, exempted the lands and property of any association formed thereunder from public taxes, rates and assessments. By the Revision the act of 1851 was repealed and its provisions were incorporated in the act of April 9th, 1875 (*ubi supra*), which had a broader object. By its section 8 the provisions of section 10 of the act of 1851 were extended to exempt lands and property of cemetery corporations incorporated under special laws. An act entitled "A supplement to the 'Act authorizing the incorporation of rural cemetery associations,' approved March fourteenth, one thousand eight hundred and fifty-one," was approved March 14th, 1879, and purported to amend section 10 of the repealed act of 1851. *Quære.* Whether any legislative intent can be discovered in an amendment of a repealed statute, and—*Held*, that if any intent can be discovered in the act of 1879, it does not repeal the exemption of the property of cemetery corporations, created by special laws contained in the act of April 9th, 1875.

On error to the Supreme Court.

By the judgment brought here by this writ the Supreme Court vacated an assessment imposed by the city of Newark on lands of the Mount Pleasant Cemetery Company for the expense of repaving Belleville avenue.

No opinion was rendered in that court, but the following memorandum was filed:

"The relator is incorporated under a special act, January 24th, 1844.

"A supplement, February 9th, 1861, exempts it from taxes and assessments until board of chosen freeholders otherwise directs.

" That exemption held good in 23 *Vroom* 539.

" June 19th, 1891, the freeholders resolved that thereafter the said association should be subject to taxes and assessments.

" The assessment for repaving now certified was subsequently imposed.

" The act of 1851, which is a general act for the incorporation of cemetery companies, exempts cemetery associations formed under that act from taxes and assessments. See, also, *Sup. L.* 1868, *p.* 832.

" Under this act the relator is not within the exempting clause, because it is not incorporated under the act of 1851, but by a special charter.

" In the revision of the laws the language of this exempting clause in the Cemetery act was changed, and it now provides that cemetery associations formed under this act ' or otherwise incorporated ' shall be exempt. *Rev., p.* 102, *pl.* 8.

" This clearly takes in the relator and entitles it to exemption from this assessment. *Foster Home Case,* 6 *Vroom* 167."

For the plaintiff in error, *Sherrerd Depue.*

For the defendant in error, *Henry Young.*

The opinion of the court was delivered by

MAGIE, J.    It is obvious that the judgment of the Supreme Court has proceeded upon the ground that the eighth section of the "Act to authorize the incorporation of rural cemetery associations and regulate cemeteries," approved April 9th, 1875 (*Rev., p.* 100), which enacts that " the cemetery lands and property of any association formed pursuant to this act or otherwise incorporated " shall be exempt from all public taxes, rates and assessments, applies to the lands and property of the

Mount Pleasant Cemetery Company and exempts them from such an assessment as was the subject of consideration and contest.

That company had been incorporated by a special act passed January 24th, 1844 (*Pamph. L., p.* 19), which enacted that the property of the incorporation thus created should not be subject to any assessment, taxes or fines, unless otherwise directed by the board of chosen freeholders of the county of Essex. This provision was, in 1890, held by this court to be obligatory and valid. *Mount Pleasant Cemetery Co.* v. *Newark*, 23 *Vroom* 539. The case shows that on June 19th, 1891, the board of chosen freeholders of Essex county passed a resolution that the lands and property of the cemetery company should thereafter be subject to all taxes and assessments imposed thereon by virtue of the laws of this state. The assessment, which was vacated by the Supreme Court, was confirmed December 31st, 1892.

It has not been contended here that the conclusion of the Supreme Court could be pronounced erroneous if the act of April 9th, 1875, possesses validity and remains in force. The contention is that the act in question either lacks constitutional validity or has been repealed so far as it affects cemetery associations incorporated under special acts, and that the assessment in question having been imposed after the passage of the resolution of the board of chosen freeholders, was not within the exemption of the act creating the Mount Pleasant Cemetery Company.

It is first argued that the title of the act of April 9th, 1875, is not in conformity to the constitutional requirement that " to avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title." *Const.*, *art.* 4, § 7, ¶ 4.

It is insisted that the law in question fails to accord with this provision of the constitution—first, because it embraces two objects.

The constitution itself discloses the reason for the restriction on legislation contained in the provision in question. It is because of the influences which might result from the inclusion in one act of matters not properly related to each other, that it requires every law to embrace but one object.

The evil intended to be guarded against was not the inclusion in one act of more than a single matter, but the inclusion therein of matters not properly related among themselves. So by its obvious construction this constitutional provision justifies and permits legislation by one statute, looking toward a single general object, although it contains and enacts various and multiform matters, if those matters are properly related to each other and tend to effectuate the general object. This is the view of the provision in question taken in this court. *Payne* v. *Mahon*, 15 *Vroom* 213. The same construction has been repeatedly given it in the Supreme Court and in the Court of Chancery. The cases will be found collected in the able opinion of the learned Chancellor in *Stockton* v. *Central Railroad Co.*, 5 *Dick. Ch. Rep.* 52.

It results that when a court is called on to determine whether a statute conforms to this requirement of the constitution the first duty is to scrutinize its provisions to see if they disclose the general object of the legislation. Then, if that object be one, and the various provisions of the statute tend to carry it out, and are not incongruous or improperly related, this requirement will have been complied with.

Turning to the act of April 9th, 1875, I find in its provisions a clear and definite general object, viz., the establishment and maintenance of cemeteries for the burial of the dead. Moreover, I find that its provisions, though various, all tend to promote that object and are not improperly related to each other. Thus it first authorizes the formation of associations to take, hold and use land for cemetery purposes and regulates the associations thus to be formed. The tendency of legislation had for many years been toward the creation of corporations by general rather than by special laws. On the preceding day the legislature had submitted to the people the

amendment to the constitution, afterward adopted, which prohibits the grant of corporate powers otherwise than by general laws. But while thus authorizing the acquisition of new corporate powers to effectuate the general object of the act, it was within legislative knowledge that cemeteries for the burial of the dead had previously been established by corporations created by special laws or the general law of 1851 hereafter mentioned, and it was obvious that the cemeteries thus established, and those which might thereafter be established by corporations formed under this act, needed legislation, in many respects at least, identical in character. Provisions making such regulations with respect to cemeteries established or to be established, tended to effectuate the object of the act and are not improperly related to the provisions for the incorporation of associations for the establishment of such cemeteries. In my judgment the object of the act is single within the meaning of the constitution.

It is next contended that the object of the act, so far as it has a purpose to exempt from public burdens cemeteries incorporated under special laws, is not expressed in the title, and it is therefore out of conformity with this provision of the constitution. The insistment is that the words "and regulate cemeteries" are not broad enough to cover a grant of exemption from taxes and assessments, and that if the act is constitutionally valid in other respects, it fails and is invalid in that respect. *Rader* v. *Union*, 10 *Vroom* 509; *Bumstead* v. *Govern*, 18 *Id.* 368; *S. C.*, 19 *Id.* 612. But this argument is based upon a too limited meaning of the word "regulate," which is conceived to be applicable only to the imposition of restrictions. But the word is of far broader meaning and includes all direction by rule of the subject-matter. As applied to property devoted to cemetery purposes, it would naturally include, not only the making of rules for its management by those having it in charge, but also the making of rules governing the conduct of others in respect thereto and of the public in respect to public burdens thereon.

The result is that the act of April 9th, 1875, is not out of conformity with the clause of the constitution in question.

But it is then contended that the act in question, if not constitutionally objectionable, has been repealed so far as it operated to exempt from taxes and assessments the cemetery property of corporations organized under special laws. This contention is thus supported :

By the provisions of an "Act authorizing the incorporation of rural cemetery associations," approved March 14th, 1851, associations might be formed to take and hold property for cemetery purposes. By section 10 the cemetery lands and property of any association formed pursuant to the act was declared to be exempt from all public taxes, rates and assessments.

The act of April 9th, 1875, included in substance the provisions of the act of March 14th, 1851, but section 10 of the latter act became section 8 of the revised act, and its exemption was extended to the lands and property not only of associations formed under the act, but also of those otherwise incorporated. This was a plain, and, as has been said, a constitutionally valid, expression of the legislative will to thus exempt the property of corporations like the Mount Pleasant Cemetery Company. On the same day the act of March 14th, 1851, was repealed. *Rev., p.* 1396, § 465.

Notwithstanding the absolute repeal in 1875 of the act of 1851, the legislature in 1879 passed a supplement to that act, which supplement was approved March 14th, 1879. *Rev. Sup., p.* 80. It recited at length the tenth section of the act to which it was declared to be a supplement, and then enacted that said section should be amended so as to read "that the cemetery lands and property of any association * * * formed pursuant to this act and actually used for cemetery purposes, shall be exempt from all public taxes, rates and assessments," &c., &c. The amendment consisted in the insertion of the words "and actually used for cemetery purposes."

It would seem to be impossible to contend that there could

be a valid amendment to a non-existent and defunct statute, but the contention is that although the act of March 14th 1851, was absolutely repealed, yet, because its provisions were re-enacted in the act of April 9th, 1875, the supplement of 1879 must be considered as being, in effect, an amendment of the latter act rather than of the act of 1851, as it purports to be. Counsel for plaintiff in error has cited many cases which he claims support this contention. One of these cases, decided in Massachusetts, will show the ground of the decisions. In that case the ninth section of chapter 57 of the public statutes was, in 1885, amended so as to read differently. In 1886 another act passed, declaring that section 9 of chapter 57 of the public statutes should read as follows, &c. In each case the enactment covered the whole subject of the original section. Upon these facts the court upheld the law as enacted in 1886. For while it conceded that the amendment of 1885 impliedly repealed the ninth section, it found the intention of the legislature to be plain that after 1885 the section as then amended should be in force, and after 1886 the section as then amended should be in force. This was put upon the ground that the sections in each statute were complete in themselves, and, being substitutes for each other, stood like independent enactments. *Commonwealth* v. *Kenneson,* 143 *Mass.* 418.

It is unnecessary to express any opinion as to the correctness of these decisions, for the facts of this case are different. The act of 1851 was not merely re-enacted in 1875. Its provisions were incorporated in a statute having a broader purpose and object. Its tenth section, which provided for exemption from public burdens, was not merely superseded by the eighth section of the act of 1875, for the latter section extended the exemption beyond the scope of the act of 1851. No legislative intent to amend the act of 1875 by striking from its eighth section the exemption thereby extended to the property of cemetery companies incorporated under special laws, can be discovered in the act of 1879. By express terms its provisions were limited in application to associations formed under the act of 1851, of which, doubtless, there were some

in existence.  If it were possible to infer an intent to apply its provisions to associations formed under the act of 1875, it is plain that the intent would be limited to such associations and would operate to restrict their exemption to lands and property actually used for cemetery purposes.  No intent can be perceived to make its provisions apply to cemetery associations otherwise incorporated, and if such was its object the title of the act failed to express it.

Nor does the act of 1879 exhibit any intent to enact legislation applicable to all cemetery incorporations and superseding all previous legislation on the subject.  On the contrary, it expressly applies only to one class of such associations. It cannot be deemed a substitute for legislation respecting another class.

It may be suggested that the act of 1879, if it has the scope claimed for it, may be of doubtful validity.  As construed in this argument, it would operate to exempt from public burdens the property of one class of cemetery corporations, leaving the property of another class of such corporations subject thereto.  The constitutional provision requiring property to be assessed for taxes under general laws impliedly requires exemptions from taxation to be granted by general laws.  And a law exempting property of certain corporations leaving property of other corporations identical in the characteristics which justify exemption, can hardly be said to be general.  But this point was not argued, and no opinion is designed to be expressed thereon.

For the other reasons given I am of opinion that the provisions of the act of April 9th, 1875, have not been repealed, and as they operated to exempt the property of the Mount Pleasant Cemetery Company from such an assessment as was imposed on it, the judgment of the Supreme Court must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, BOGERT, BROWN, SIMS, SMITH, TALMAN.  12.

*For reversal*—None.