STATE OF NEW JERSEY, COMPLAINANT-RESPONDENT, v.
JOHN CZARNICKI, DEFENDANT-PROSECUTOR.

Submitted October 3, 1939—Decided January 10, 1940.

Before Justices Trenchard, Case and Heher.

· For the prosecutor, *Edward M. Salley* (*Edward A. Markley* and *Charles W. Broadhurst,* of counsel).

For the respondent, *Daniel O'Regan,* prosecutor of the pleas, and *Frank G. Schlosser,* assistant prosecutor.

The opinion of the court was delivered by

Heher, J.   This cause should be captioned as above. Rule 15 of this court directs that the parties be named in the order in which they appeared in the title below, even though the defendant be the moving party here.

Prosecutor was convicted, and adjudged to be a disorderly person, in the Hudson County Traffic Court on a complaint charging the possession on June 26th, 1939, of "lottery slips pertaining to a lottery," in contravention of section 2 :202-16 of the Revised Statutes of 1937.   Upon the imposition of sentence, he petitioned the Hudson Common Pleas for a summary review of the conviction.   Such review was had, and the judgment was affirmed.   Thereupon, he sued out this writ of *certiorari;* and the judgment, "together with all matters touching the same, including the testimony taken in the Hudson County Traffic Court," have been returned in obedience to its mandate.

*First:* The primary insistence is that section 2 :229-3 of the Revision, *supra,* clothing the several county traffic courts with jurisdiction of the offenses denounced by sections 2 :201-1, *et seq.,* contravenes article IV, section VII, *placitum* 4, of the State Constitution, in that "said statute embraces more than one object and such object is not expressed in its title."

The point is not well made.   It proceeds on the premise that chapter 71 of the laws of 1930 (*Pamph. L., p.* 300), entitled "An act relating to county traffic courts, defining their jurisdiction, powers and duties," as amended by chapter 26 of the laws of 1934 (*Pamph. L., p.* 78), the source of section 2 :229-3 of the Revision, *supra,* violated the cited con-

stitutional precept, to the conclusion that this asserted invalidity extends to the like provisions incorporated in the revision. But such is not the case.

Granting the postulate for present purposes, the conclusion is faulty. *Non sequitur.* The revision is a wholly independent enactment, superseding all pre-existing general laws; and the constitutionality of its several provisions in this behalf depends upon its own title and not upon the titles of prior enactments embodied therein. It is entitled "An act to establish all the public statute law of a general nature of the State of New Jersey in the form of a revision, consolidation and compilation, to be known as the Revised Statutes." Thus, the object of the enactment is single and is expressed in its title. The stated object is the "revision, consolidation and compilation" of *"all* the public statute law of a general nature." The contrary view would nullify the revision; it would render a general revision impossible. The title is in no sense uncertain, misleading or deceptive. This is the general test of constitutional sufficiency in this regard. *Public Service Electric, &c., Co.* v. *Camden,* 118 *N. J. L.* 245; *State* v. *Guida,* 119 *Id.* 464.

Nor is there a plurality of objects in the constitutional sense. A revision, consolidation and compilation of all the general laws is not within the mischiefs outlawed by this constitutional edict. That constitutes a unified object, *i. e.,* the achievement of the major advantages to be had through the revision, consolidation and compilation of the general public laws into a systematic whole. The act providing for the revision (chapter 73 of the laws of 1925, page 244) affirms the legislative concept of the benefits thus to be had; and we deem it unnecessary further to elaborate the theme. The object is single, even though statutory provisions otherwise unrelated in subject-matter are combined in one general enactment. The constitutional command thus invoked was designed "to prevent the concealment of the real object of the act and what is commonly called log-rolling." *Hulme* v. *Board of Commissioners of Trenton,* 95 *N. J. L.* 30; *affirmed, Id.* 545. See, also, *Sawter* v. *Shoenthal,* 81 *Id.* 197; *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831; 31 *S. E. Rep.*

531; 42 *L. R. A.* 518; *Johnson* v. *Harrison*, 47 *Minn.* 575; 50 *N. W. Rep.* 923; *Marston* v. *Humes*, 3 *Wash.* 267; 28 *Pac. Rep.* 520.

*Second:* It is next urged that "there was no competent legal proof that a lottery in fact existed and that the alleged lottery slips found in prosecutor's possession were a part of or pertained to said existing lottery," and therefore the conviction is utterly lacking in evidential support.

The transcript of the evidence and proceedings reveals that the question thus presented was not raised below. The case was tried on the assumption that the lottery slips were in fact contraband within the definition of the statute. The defense interposed was that the slips had not been in the possession of the accused; and he moved, at the close of the case, for "a direction of verdict of not guilty" on the grounds (a) that the "complaint * * * is defective;" (b) that "the court is without jurisdiction;" and (c) the "only testimony in this case is the testimony of Officer Lisa and this defendant," and therefore guilt had not been "established beyond a reasonable doubt," and the court was under "a duty * * * to find this defendant not guilty."

In a proceeding such as this, the writ of *certiorari* serves the function of a writ of error. The review is confined to errors of law. This court does not review the evidence and resolve factual disputes; it accepts the fact-findings of the inferior court, if there be any legal evidence to sustain them. *Ayres* v. *Bartlet*, 14 *N. J. L.* 330; *Coles* v. *Blythe*, 69 *Id.* 666; *Ryer* v. *Turkel*, 75 *Id.* 677; *Shangnuole* v. *Ohl*, 58 *Id.* 557; *McAdam* v. *Block*, 63 *Id.* 508; *Traphagen* v. *Township of West Hoboken*, 39 *Id.* 232; *affirmed*, 40 *Id.* 193; *State, Elder, Pros.*, v. *District Medical Society of Hudson County*, 35 *Id.* 200. And the rule is firmly embedded in our system of procedure, apposite also to such reviews by *certiorari*, that the appellate court will not take cognizance of a question not raised in the inferior tribunal, unless it be an error of law exhibited on the face of the record or one involving jurisdiction or public policy. *Kluczek* v. *State*, 115 *Id.* 105; *State* v. *Shupe*, 88 *Id.* 610; *Schmid* v. *Law*, 83 *Id.* 635; *Mechler* v. *Fialk*, 82 *N. J. L.* 273; *affirmed*, 84 *Id.* 406;

*Ryer* v. *Turkel, supra; State* v. *O'Leary,* 110 *Id.* 36; *Corn* v. *Kaplan,* 103 *Id.* 628; *Reeves* v. *Jones,* 74 *Id.* 330; *Shangnuole* v. *Ohl, supra; Smith* v. *Elizabeth,* 46 *Id.* 312; *State* v. *Verona,* 93 *Id.* 389; *State* v. *Schlosser,* 85 *Id.* 165; *affirmed,* 86 *Id.* 374. Ordinarily, the writ of *certiorari* evokes the return of the entire record of the inferior tribunal, but this does not render inapplicable the general rule that only the questions raised therein are cognizable by the court of review.

More specifically, the question of failure of proof will not be considered unless raised in the court of first instance. *State* v. *Hop,* 90 *N. J. L.* 390; *State* v. *Schlosser, supra.* This rule was applied in *Potter* v. *Deyo,* 19 *Wend.* 361, where the relator, charged with the sale of liquor without a license, moved for a nonsuit on the ground that the place where the liquor was alleged to have been sold had not been proved, but did not assert an absence of proof that the sale had been made without a license. It was held that the latter question was not reviewable. The virtue of this general procedural rule, so applied, is that, had the absence of such testimony been raised in the lower tribunal by an appropriate objection, the lack might well have been supplied. Sections 2:27-344, 2:27-345; 2:27-348 and 2:27-358 of the Revision, *supra,* are not applicable. They abolish bills of exception and writs of error in "civil cases" only. The point is therefore untenable.

Moreover, were we obliged to consider the question on the merits, we should feel constrained to resolve it against prosecutor.

The alleged lottery slips, sixteen in number, were introduced into evidence without objection. They were identified as "lottery slips" by a detective of long experience, whose qualifications in this regard were not challenged. See *State* v. *Arthur,* 70 *N. J. L.* 425. As stated, the character of the papers was not in issue; prosecutor denied they were found in his possession. But the arresting officer testified that he took him into custody as "he was placing in his right-hand pocket an envelope containing" the "lottery slips," and that he admitted ownership and asked for "a break." Shortly

thereafter, upon the arrival of a superior officer, so the latter testified, the accused directed this appeal to him: "Chief, will you give me a break? You got me right. Will you please give me a break?" And he also admitted to the officer that "he had nineteen runners under him, number runners." It was reasonably inferable from all the evidence that the slips pertained to an existing lottery. They bore evidence on their face of an interest in a lottery still to be concluded on the very day of prosecutor's arrest. They were *prima facie* evidential of an existing lottery.

*Third:* Lastly, it is contended that, "on the supposition that it was the intent of the legislature under the statute (*R. S.* 1937, 2:202-16) to make the mere possession of lottery slips disorderly conduct even though they did not pertain to a then existing lottery," the act, "in so far as it makes mere possession or custody of a lottery slip disorderly conduct," contravenes section I of the Fourteenth Amendment of the Federal Constitution, "by abridging prosecutor's privileges and immunities as a citizen of the United States and denying him due process of law because it is arbitrary and unreasonable."

There is no occasion to resolve this point. It was not made below. It suffices to say that the state interprets the provision as applying only to lottery slips in an existing lottery, and that, as heretofore stated, the trial of the complaint proceeded on the hypothesis that the enactment constituted a valid exercise of legislative power and that the lottery slips in question were within its interdict. See, in this connection, *State* v. *Arthur, supra.* And it is also to be observed that the contention is that the statute, if thus broadly construed, is void in part only. The argument is that the classification as a disorderly person of the possessor of a lottery slip not "related to an existing lottery" is "arbitrary, capricious, unreasonable and void." It is termed, in this respect, an unreasonable exercise of the police power.

The judgment is accordingly affirmed, with costs.