759 A.2d 1256

JUDITH CAMBRIA AND THE LEAGUE OF WOMEN VOTERS OF NEW JERSEY, INC., PLAINTIFFS, v. DEFOREST B. SOARIES, THE SECRETARY OF STATE OF THE STATE OF NEW JERSEY, AND JOHN FARMER, THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division Mercer County

August 4, 2000.

*Douglas S. Eakeley,* for plaintiffs (*Lowenstein Sandler, P.C.,* attorneys).

*Patrick DeAlmeida,* Deputy Attorney General, for defendants (*John J. Farmer, Jr.,* Attorney General of the State of New Jersey, attorney).

FEINBERG, A.J.S.C.

## *ISSUE*

The single issue presented is whether Article IX of the Constitution of the State of New Jersey, which provides the manner in which Constitutional amendments are presented to the public for approval at general elections, precludes the defendants from certifying and placing on the November 2000 ballot a single public question that asks New Jersey voters to approve a Constitutional amendment which would dedicate revenues from two separate State taxes to New Jersey's Transportation Trust Fund.

## *PROCEDURAL HISTORY*

On July 24, 2000, plaintiffs, Judith Cambria and The League of Women Voters of New Jersey, Inc., filed a verified complaint in lieu of prerogative writ and an order to show cause seeking temporary restraints against DeForest B. Soaries, Secretary of State of New Jersey, and John F. Farmer, Jr., Attorney General of New Jersey. Plaintiffs' verified complaint demands: (1) declaratory relief pursuant to *N.J.S.A.* 2A:16–51, declaring the proposed public question unconstitutional; (2) preliminary and final injunctive relief, pursuant to *R.* 4:52 and *R.* 4:69–3, enjoining the Secretary of State from certifying the proposed public question on the ballot unless and until all constitutional problems have been cured; and (3) preliminary and final injunctive relief, pursuant to *R.* 4:52 and *R.* 4:69–3, enjoining the Attorney General from causing or permitting any ballot which contains the proposed public question to be prepared and distributed unless and until all constitutional problems have been cured.

Following a telephonic conference with the parties on July 24, 2000, the court signed an order: (1) denying temporary re-

straints [1]; (2) permitting the order to show cause to issue in lieu of a summons; (3) establishing a briefing schedule; and (4) scheduling the matter for disposition of the merits of the verified complaint on Friday, August 4, 2000.[2]

## BACKGROUND

On June 26, 2000, the New Jersey State Senate approved, by a vote of 37 to 1, Senate Concurrent Resolution No. 1 (the "Resolution"). Three days later, the New Jersey State Assembly approved the Resolution by a vote of 78 to 1. The Resolution proposes to amend Article VIII, Section II, paragraph 4 of the Constitution of the State of New Jersey.

Adopted by the voters on November 6, 1984 and amended by the voters on November 7, 1995, paragraph 4 presently provides for the dedication of revenue derived from $0.025 per gallon from the tax imposed on the sale of motor fuels pursuant to chapter 39 of Title 54 to a special account of the Transportation Trust Fund ("TTF"). These funds are dedicated for the purpose of "paying or financing the cost of planning, acquisition, engineering, construction, reconstruction, repair and rehabilitation of the transportation system in the State...."[3] *N.J. Const.* art. VIII, § II, ¶ 4.

---

[1] In order to place the public question on the November, 2000 ballot, the Legislature must cause publication of the proposed Constitutional amendment three months prior to submission to the people, an event which will occur here on or before August 7, 2000. *N.J. Const.* art. IX, ¶ 3. Additionally, the public question must be certified for inclusion on the ballot by the Secretary of State and delivered to the Division of Elections 86 days before the election, another event that must occur by August 10, 2000. *N.J.S.A.* 19:13–22. Because the court determined that it would adjudicate the merits of plaintiffs' verified complaint prior to those deadlines, the court denied temporary restraints.

[2] On July 31, 2000, defendants filed a cross-motion to dismiss plaintiffs' verified complaint for failure to state a claim.

[3] The 1995 amendment continued the dedication of money in the General Fund to the TTF in an amount measured by the revenue gained from the motor fuels tax. The amendment, however, varied the amount of motor fuels tax

The concurrent Resolution, approved by the Legislature last month, proposes to amend paragraph 4 to allow for the continued dedication of money in the General Fund to the TTF. The proffered amendment, however, proposes to amend paragraph 4 to create three subparagraphs. If the amendment is adopted, the amount dedicated to the TTF will be the equivalent of: (1) $0.09 (instead of $0.025) per gallon of motor fuels tax raised for each fiscal year commencing on or after July 1, 1999; (2) an amount not less than $100,000,000 of annual revenues derived from the petroleum products' gross receipts tax pursuant to *N.J.S.A.* 54:15B-1 to -3 during this fiscal year and, not less than $200,000,000 during each fiscal year thereafter; and (3) an amount not less than $80,000,000 derived from the annual revenues generated by the sales and use tax[4] pursuant to *N.J.S.A.* 54:32B-1 to -3 during the next fiscal year, not less than $140,000,000 during the following fiscal year and not less than $200,000,000 each fiscal year thereafter.

The record reflects that prior to final approval of the Resolution by the Legislature, Judith Cambria and the League of Woman Voters of New Jersey, Inc. (the "League")[5] voiced their objections to the combination of these two provisions into a single Constitutional amendment.

------

revenue that would be used as a measuring stick for determining how much of the money in the General Fund would be dedicated to the TTF.

[4] The text of the proposed amendment only refers to the sales and use tax generally. In the interpretative statement, however, there is reference to dedication of revenue to the TTF from the sales tax derived from the sale of new motor vehicles.

[5] The League is a not-for-profit New Jersey corporation aimed at promoting political responsibility through informed and active participation of citizens in government; Ms. Cambria is the Fiscal Policy Director of the League and has testified before the State Legislature. The League opposed the Resolution on grounds that it violated the State Constitution by denying voters the right to vote on each "amendment" separately.

## ARGUMENTS

Plaintiffs assert that the Resolution violates Article IX, paragraph 5 of the Constitution, which requires that "more than one amendment be submitted ... in such a manner and form that the people may vote for or against each amendment separately and distinctly." According to the plaintiffs, in its present form, the Resolution deprives voters of their right to vote separately on each amendment by forcing the public to either approve or disapprove of the dedication of both revenue streams. In essence, plaintiffs assert that Article IX, paragraph 5 establishes a single subject or single object rule that precludes this all or nothing choice imposed by the Legislature.

Not surprisingly, the defendants disagree for two reasons. First, defendants contend that paragraphs 1 and 5 of Article IX do not impose a single subject standard and that the proposed amendment may be presented to the voters as a single public question. Second, defendants assert that even if Article IX is viewed as imposing a single object standard, the public question is valid because it presents consideration of a single amendment in the form of one question.

As to the first issue, the defendants assert that the sole check on the content of the Legislature's proposals is the super-majority/successive majority requirement set forth in paragraph 1 of Article IX. Defendants contend that Article IX, paragraph 1 is otherwise a broad, expansive grant of power that stands in "sharp contrast" to other Constitutional provisions, such as Article IV, Section VII, paragraph 4 and Article VIII, Section II, paragraph 3, which unequivocally restrict the Legislature's ability to address multiple topics in one piece of legislation.

Defendants assert that the language "[i]f more than one amendment be submitted, they shall be submitted in such a manner and form that the people may vote for or against each amendment separately and distinctly," is limited to the adoption of multiple amendments by the Legislature. Importantly, defendants assert that this paragraph addresses the "quantity of concurrent resolu-

tions approved by the Legislature in any given year, not the content of those resolutions." (Def.'s Br. at 11).

Relying on the established practice and authority of the Legislature to submit to the voters constitutional amendments that address more than one object, defendants cite numerous examples in which multiple topics have been presented in the form of a single amendment, without challenge. *New Jersey Ass'n on Correction v. Lan,* 80 *N.J.* 199, 403 *A.*2d 437 (1979). For example, defendants posit that the 1947 Constitution itself was presented to the voters for approval as a single ballot question and that the various Articles, sections, and paragraphs were not broken down into separate public questions; "[t]o require each element of a legislative plan to amend the Constitution to be diluted through a splintered presentation to the voters would deal a fatal blow to the Legislature's ability to draft complex and nuanced revisions to the Constitution." (Def's Br. at 14).

As to the second issue, the defendants submit that the proposed amendment satisfies the single object or single subject standard set forth in Article IV, Section 7, paragraph 4 and that the single object rule may only be used to strike legislative acts in the narrowest of circumstances. Defendants submit that the standard for the single object rule, as articulated in *Lan, supra,* is indulgent and liberal, and that basing the dedication of money in the General Fund for the TTF on revenue raised by the petroleum products gross receipts tax and on revenue raised by the sales tax are sufficiently related objects to constitute one proposed amendment to the Constitution. Defendants proffer the following reasons to support their assertion: (1) the proposed amendment only amends one existing provision of the Constitution and concerns the dedication of money for deposit in a single fund, the TTF; (2) the proposed amendment concerns only tax revenues that, absent approval of the amendment, would be deposited in the State's General Fund to be used for any purpose by the Legislature; (3) the voters are not being asked to change the designated use of funds that were previously allotted for a different purpose;

(4) there is nothing in the Constitution or elsewhere that requires that State expenditures for a particular purpose arise from revenue related to that purpose; and (5) it is for the Legislature to determine which taxes, and what portion thereof, should be used to fund a particular State program, and here, the Legislature has decided that the TTF should be funded through the petroleum products gross receipts tax and the sales tax.

Based on the above, the defendants submit that the position by the plaintiffs, that the two taxes are so different from one another as to warrant the submission of two amendments, is "specious."

In response, the plaintiffs dispute the broad interpretation suggested by the defendants. Rather, plaintiffs submit that the grant of authority allocated to the Legislature in Article IX, paragraph 1 must be construed narrowly to comport with ordinary standards of Constitutional interpretation. Applying this standard, plaintiffs assert that by its very terms, Article IX permits the Legislature to select "specific" amendments to be approved and submitted to the electorate for ratification, not multiple amendments wrapped up in a single concurrent resolution encompassing more than one substantive area or incorporating more than one change to the Constitution. Plaintiffs submit that the fact that the framers used the terms "specific" in paragraph 1 and "separately and distinctly" in paragraph 5, rather than "single object" as in Article IV, demonstrates that the drafters intended the Legislature's role in the amendatory process to be more restrictive than in the legislative process under Article IV.

In essence, plaintiffs contend that the Resolution to be submitted for public approval presents two separate amendments in a single ballot question, thereby offending the mandate established by Article IX, paragraph 5. Finally, the plaintiffs submit the defendants are attempting to engraft the "single object" rule of Article IV and its "judicial gloss" onto Article IX when they are entirely different Constitutional provisions with different wording and differing purposes.

## THE COURT'S ANALYSIS AND CONCLUSION

The Legislature's Resolution proposes to amend Article VIII, Section II, paragraph 4 of the Constitution of the State of New Jersey. Paragraph 4 provides for the dedication of certain revenue from motor fuel taxes to the TTF for the "paying or financing the cost of planning, acquisition, engineering, construction, reconstruction, repair and rehabilitation of the transportation system in the State. . . ." The concurrent Resolution, approved by the Legislature last month, proposes to amend paragraph 4 to allow for the continued dedication of money in the General Fund to the TTF. The proposed amendment, however, proposes to amend paragraph 4 to create three subparagraphs.

If the amendment is adopted, the amount dedicated to the TTF will be the equivalent of: (1) $0.09 (instead of $0.025) per gallon of motor fuels tax raised for each fiscal year commencing on or after July 1, 1999; (2) an amount not less than $100,000,000 of annual revenues derived from the petroleum products gross receipts tax pursuant to N.J.S.A. 54:15B-1 to -3 during this fiscal year and, not less than $200,000,000 during each fiscal year thereafter; and (3) an amount not less than $80,000,000 derived from the annual revenues generated by the sales and use tax pursuant to N.J.S.A. 54:32B-1 to -3 during the next fiscal year, not less than $140,000,000 during the following fiscal year and not less than $200,000,000 each fiscal year thereafter.

Plaintiffs submit that this proposed amendment offends Article IX, paragraph 5 of the Constitution because it will introduce the question of whether to dedicate revenues from two separate taxes to the TTF to the public for approval at the November general election in the form of one public question. Although in the form of one amendment, plaintiffs suggest that in reality, the proposed amendment is truly two separate amendments to Article VIII under the guise of one amendment. Therefore, plaintiffs contend, the "amendments" should be submitted separately under Article IX, paragraph 5 to the public.

## I.

## ARTICLE IX OF THE CONSTITUTION DOES NOT IMPOSE A LIMITATION ON THE AMOUNT OF CHANGES THAT MAY BE INCLUDED IN ONE CONSTITUTIONAL AMENDMENT OR A SINGLE SUBJECT REQUIREMENT ON PUBLIC QUESTIONS ADDRESSING PROPOSED CONSTITUTIONAL AMENDMENTS

This case raises for the first time in a judicial forum the question of whether the New Jersey Constitution constrains the Legislature's prerogative by imposing a "single object" requirement on its proposals to amend the Constitution.

The analysis begins with Article IX, paragraph 1, entitled "Proposal of amendments; public hearings; approval by Legislature." Importantly, paragraph 1, in pertinent part, provides:

> Any specific amendment or amendments to this Constitution may be proposed in the Senate or General Assembly.... If the proposed amendment or amendments or any of them shall be agreed to by three-fifths of all the members of each of the respective houses, the same shall be submitted to the people. It the same or any of them shall be agreed to by less than three-fifths but nevertheless by a majority of all of the members of each of the respective houses, such proposed amendment or amendment shall be referred to the Legislature in the next legislative year; and if in that year the same or any of them shall be agreed to by a majority of all the members of each of the respective houses, then such amendments or amendments shall be submitted to the people.

[*N.J. Const.* art. IX, ¶ 1.]

Having set forth the scope of the Legislature's power to draft the content of proposed amendments in paragraph 1 without limitation to a single object, the framers devoted the remainder of the Article to delineating the procedural steps necessary for submission of authorized amendments to the voters. Paragraph 2 requires entry of the proposals and the votes thereon in the journal of each house. *N.J. Const.* art. IX, ¶ 2. Paragraph 3 requires publication of the proposal prior to the vote. *N.J. Const.* art. IX, ¶ 3. Paragraph 4 vests in the Legislature the authority to compose "the manner and form" in which the proposals will be submitted to the public. *N.J. Const.* art. IX, ¶ 4.

Paragraph 5 of Article IX, upon which plaintiffs base their claims, provides a procedural requirement in those instances where the Legislature has adopted more than one proposal to amend the Constitution for submission to the voters in the same year. It states:

> If more than one amendment be submitted, they shall be submitted in such manner and form that the people may vote for or against each amendment separately and distinctly.
>
> [*N.J. Const.* art. IX, ¶ 5.]

Finally, paragraphs 6 and 7 address approval of the amendments by the people, the effective dates if approved and resubmission of rejected amendments. *N.J. Const.* art. IX, ¶¶ 6–7.

To determine the constitutionality of the Legislature's proposed Constitutional amendment, the court must review and analyze the relevant paragraphs of Article IX of the Constitution, which deal exclusively with amendments. It is well-settled that " '[t]he polestar of constitutional construction is always the intent and purpose of the particular provision.' " *State v. Trump Hotels & Casino Resorts, Inc.,* 160 *N.J.* 505, 527, 734 *A.*2d 1160 (1999) (quoting *State v. Apportionment Comm'n,* 125 *N.J.* 375, 382, 593 *A.*2d 710 (1991)); *Board of Chosen Freeholders of Morris v. State,* 159 *N.J.* 565, 575, 732 *A.*2d 1053 (1999) "In ascertaining the intent of a constitutional provision, a court must first look to the precise language used by the drafters. If the language is clear and unambiguous, the words used must be given their plain meaning." *Trump Hotels & Casino Resorts, supra,* 160 *N.J.* at 527, 734 *A.*2d 1160 (citing *Gangemi v. Berry,* 25 *N.J.* 1, 10, 134 *A.*2d 1 (1957)). The Court has proclaimed that:

> It is a familiar rule of construction that where phraseology is precise and unambiguous there is no room for judicial interpretation or for resort to extrinsic materials. The language speaks for itself, and where found in our State Constitution the language is the voice of the people.
>
> [*Trump Hotels & Casino Resorts, supra,* 160 *N.J.* at 527, 734 *A.*2d 1160 (quoting *Vreeland v. Byrne,* 72 *N.J.* 292, 302, 370 *A.*2d 825 (1977)).]

If the language of the Constitutional provision is unclear, ambiguous or susceptible to more than one interpretation, "courts may consider sources beyond the instrument itself to ascertain its

intent and purpose." *Id.* at 527–28, 734 *A.*2d 1160. Applying this standard, the court is satisfied that the decision by the Legislature to submit the proposed amendment in the form of a single public question must stand.

As noted herein, paragraph 1 provides that *"[a]ny* specific amendment or amendments to th[e] Constitution may be proposed in the Senate or General Assembly." *N.J. Const.* art. IX, ¶ 1 (emphasis added). Paragraph 1 does not impose any restriction on the content or subject matter of an amendment nor does it limit the number of issues contained in a single amendment. Contrary to the position advanced by the plaintiffs, paragraph 1 does not provide for a ceiling on the Legislature's power to draft the *content* of a proposed Constitutional amendment. Rather, the sole check or limitation on the content of the Legislature's proposals is the super-majority/successive majority requirement set forth in paragraph 1, requiring a three-fifths majority of all members of both houses or a majority vote of all members in the voting and successive years on each and every amendment. Only if this heightened voting requirement is met, will an amendment proceed to the voters for approval.

In the case at bar, the record reflects that, each house surpassed the super-majority voting requirement when the houses voted to approve the proposed Constitutional amendment. Members of both houses voted for and subsequently approved the amendment as *one* single amendment, not two or more amendments. The Legislature now seeks to submit its amendment to the people for approval as a single amendment.

Relying on the provisions of Article IX, paragraph 5, plaintiffs assert that the defendants have violated the single subject standard. Paragraph 5, entitled "Multiple Amendments; form of submission to the people," provides:

If more than one amendment be submitted, they shall be submitted in such manner and form that the people may vote for or against each amendment separately and distinctly.

Based on this language, plaintiffs submit that the Legislature's proposed amendment is actually two amendments and therefore, must be submitted to the people as separate and distinct. As noted above, this position is without merit. The record in this case reflects that the Legislature voted on and approved the amendment as a single amendment and did not take two separate votes. The vote required each member of each house to determine whether or not the amendment, which provided for the dedication of revenues from two separate taxes to the TTF, should be adopted. Separate votes were not solicited or taken, although the Legislature had the authority, if it had chosen, to bifurcate the vote by passing two separate and independent amendments. That discretion is not now subject to review by this or any other court. To do so would clearly offend the separation of powers necessary for the efficient and effective operation of government.

Most importantly, a plain and uncomplicated review of Article IX supports the defendants' interpretation and requires a denial of plaintiffs' requested relief. Furthermore, as in any other matter of constitutional proportion, the court cannot review this issue in a vacuum. What plaintiffs propose is for this court to permit the voters to vote separately on what the Legislature has already voted on and approved through one single vote. Significantly, when the members of both houses were asked to vote upon whether or not to approve the dedication of revenues from the two separate taxes, they were asked to decide whether to vote for or against dedication of revenues from both taxes. In other words, the members of the Senate and General Assembly were precluded from voting in favor of the dedication of one tax and in opposition to the dedication of the other. Despite the fact that the legislators were precluded from voting separately on the tax revenue dedications, plaintiffs now want the voters to have a choice to vote against one and in favor of the other when the legislators themselves did not have such a choice.

The effect of plaintiffs' suggestion would doubtless violate the clear and unequivocal intent of the Constitutional amendatory

process outlined in Article IX. After the Legislature votes on and approves a proposed constitutional amendment, that proposal does not become an amendment to the Constitution until and unless the amendment is submitted to the electorate through a public question and a majority of the voters approve what the Legislature proposes. *N.J. Const.* art. IX, ¶¶ 4–6. Inherent in this process is the requirement that the proposal submitted to the people for approval is the same proposal voted upon and approved by the Legislature.

Furthermore, plaintiffs' interpretation would permit the judiciary to dissect the Legislature's proposed amendment and determine whether the different issues warrant separate public questions. In this case, for instance, the court would separate out each of the different issues so that they are presented individually to the electorate. If the court were to dissect the proposal, it must determine how many changes are actually proposed. Would it only warrant two public questions, as plaintiffs submit, or would it necessitate more?

The proposed amendment includes the creation of three subparagraphs to Article VIII, Section II, paragraph 4. Subparagraph (a) suggests a change in the amount of revenue dedicated to the TTF from motor fuel taxes under *N.J.S.A.* 54:39–1 *et seq.,* subparagraph (b) seeks to dedicate to the TTF certain revenue from petroleum products taxes under *N.J.S.A.* 54:15B–1 to –3; and subparagraph (c) endeavors to dedicate certain revenue from sales and use taxes, under *N.J.S.A.* 54:32B–1 to –3, to the TTF. Consequently, should there be three separate public questions? Or, should there be an amendment and therefore a public question for each of the separate fiscal years because they differ in dollar amounts?

Clearly, such a breakdown of the proposed amendment is not contemplated by—let alone articulated in—Article IX. Further, how would a court determine where to draw the line and determine what types of issues may be included in one single amend-

ment and when to separate them out into different public questions?

■ The answer is simple: that very analysis is reserved for the Legislature. When the Legislature proposes an amendment, holds a hearing on the amendment, debates the amendment and eventually votes on that amendment, the Legislature determines whether the changes it proposes warrant more than a single amendment. It is not for this or any court to second guess the Legislature's decision to include multiple issues in one proposed Constitutional amendment. Implicit in any Legislative act is a presumption in favor of the validity of that act:

> [T]he exercise of the judicial power to invalidate a legislative act "has always been exercised with extreme self restraint, and with a deep awareness that the challenged enactment represents the considered action of a body composed of popularly elected representatives." Consistent with that policy of restraint, [the Court has] emphasized that "a legislative act will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt."
>
> [*Trump Hotels & Casino Resorts Inc.*, *supra*, 160 *N.J.* at 526, 734 *A.*2d 1160 (citations omitted).]

Moreover, it is important to recognize that the Legislature does not have the final decision as to whether to amend the Constitution; the final requirement is a majority vote by the electorate. The voters will have the opportunity to determine whether to approve or reject the amendment.

■ The language included in paragraphs 1 and 5 of Article IX does not state that a proposed Constitutional amendment can only include one subject or one issue, or that only one subject or one issue must be separately submitted to the people in each public question. The language only states that each amendment is to be voted on by the Legislature, and once approved, must be submitted to the public separately and distinctly. There is no limitation or restriction on what a Constitutional amendment can include, and importantly, the amount of subjects or issues that can be addressed in one single amendment.

Other Constitutional provisions, containing limitations on the number of subjects and placing constraints on the content of

Legislative enactments, provide further support of this interpretation of Article IX. For example, Article IV, Section 7, paragraph 4, which deals with the content and title of Legislative enactments and laws adopting compilations or revisions of statutes, provides, in relevant part that:

> To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, *every law shall embrace but one object*, and that shall be expressed in the title. (emphasis added).

There is no such pronouncement in Article IX. As defendants submit, and this court agrees wholeheartedly, "[t]his provision . . . demonstrates that when the framers . . . sought to circumscribe the Legislature's ability to include multiple topics in a single pronouncement *they did so expressly.*" (Def.'s Br. at 9 (emphasis added).)

Similarly, Article VIII, section 2, paragraph 3, which deals with taxation and finance, and more particular limitations of indebtedness, provides, in relevant part, that:

> The Legislature shall not, in any manner, create in any fiscal year a debt or debts, liability or liabilities of the State, which together with any previous debts or liabilities shall exceed at any time one per centum of the total amount appropriated by the general appropriation law for that fiscal year, unless the same shall be authorized by a law *for some single object* or work distinctly specified therein. (emphasis added).

It is well-established that "[u]nder the established canons of statutory construction, where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." *GE Solid State, Inc. v. Director, Division of Taxation*, 132 *N.J.* 298, 308, 625 *A.*2d 468 (1993). Logic demands that the same rule applies to the framers of the Constitution. The ability of the drafters to expressly circumscribe legislative power to a single topic when they sought to do so argues in favor of the defendants' interpretation of Article IX.

In sum, plaintiffs' interpretation of Article IX, paragraph 5 is seriously flawed. Paragraph 5 does not authorize this or any court to examine the substance of any single proposal to change the Constitution: this proposition is supported by its unambiguous

language. Instead, as defendants submit, and this court agrees, paragraph 5 merely provides that, when the Legislature authorizes more than one proposal to alter the Constitution for approval in the same election year, each proposal, regardless of the number of objects or subjects it addresses or changes it would make to the Constitution, must be submitted to the voters in a manner that allows a separate vote on its adoption. Paragraph 5 concerns the quantity of concurrent resolutions proposed by the Legislature in any given year, not the content of those resolutions.[6]

---

[6] The court notes that defendants represent in their brief that the historic construction of Article IX argues in favor of this interpretation. According to defendants, since 1947, the Constitution has been amended numerous times without challenge through adoption of public questions that arguably address more than one subject and propose more than one amendment. The court notes that consideration of the legislative practice utilized in presenting proposed amendments containing multiple issues to the public is not irrelevant even though "unchallenged by litigation." *New Jersey Ass'n on Correction v. Lan*, 80 *N.J.* 199, 213, 403 *A.2d* 437 (1979). "Like all precedents, where contemporaneous and practical interpretation has stood unchallenged for a considerable length of time it will be regarded as of great importance in arriving at the proper construction of a statute [or a constitution]." *Id.* at 215, 403 *A.2d* 437 (internal quotations and citations omitted).

According to defendants: (1) the entire 1947 Constitution was presented to the voters for approval as a single ballot question, and the electorate voted to amend the whole constitution in a single vote; (2) in 1976, the voters adopted through a single ballot question an amendment to Article VIII, section 1, paragraph 5 which authorized tax rebates and credits for residents over 65, for totally and permanently disabled individuals and for certain surviving spouses of those individuals; (3) in 1976, the voters were presented with a single public question concerning the amendment of Article 4, section 7, paragraph 2 to permit casino gambling in Atlantic City and to require that State revenue derived therefrom be applied solely for the purpose of reducing property taxes, rents, telephone costs, and utilities charges for senior citizens and disabled residents of the State; (4) in 1995, a single public question was presented to the voters regarding the amendment of Article VIII, section 2 to prohibit certain unfunded mandates, and although the proposed amendment contained seven separate exceptions to the ban for laws and rules, all of the exceptions, along with the remainder of the proposed amendment, were presented to the voters as a single public question; and (5) even the Constitutional provision which the Legislature seeks to amend in this case, Article VIII, Section 2, paragraph 4, was amended in 1995 through submission of a single public

Both the Senate and General Assembly passed a single amendment. That this amendment changes Article VIII in more than one respect does not alter its character as a single amendment. Paragraph 5 merely ensures that each proposal emanating from the Legislature, regardless of the number of changes it proposes, is considered by the voters separately.

## II.

### EVEN IF ARTICLE IX IS VIEWED AS IMPOSING A SINGLE OBJECT STANDARD ON PROPOSED CONSTITUTIONAL AMENDMENTS, THE PUBLIC QUESTION AT ISSUE IN THIS MATTER IS VALID BECAUSE IT PRESENTS THE SOLE QUESTION OF WHETHER VOTERS WISH TO DEDICATE MONEY IN THE GENERAL FUND FOR DEPOSIT IN THE TRANSPORTATION TRUST FUND

As noted in the previous section, the single subject standard does not apply to Article IX. However, the single subject standard is a well recognized principle in New Jersey. For example, Article IV, Section 7, prohibits the Legislature from including more than one topic in a statute and Article VIII, Section 2, paragraph 3 expressly prohibits the Legislature from creating in any fiscal year debts or liabilities in certain circumstances unless authorized by a "law for some single object or work distinctly specified therein."

The limited nature of the single object rule is perhaps best emphasized in *New Jersey Ass'n on Correction v. Lan*, 80 *N.J.* 199, 403 *A.2d* 437 (1979),[7] in which the Court upheld submission of

question that concerned numerous fiscal years and various rates of revenue dedication.

[7] The Constitution inhibits the creation of such State debt absent approval by the people. Importantly, Article VIII, Section 2, paragraph 3, expressly prohibits the Legislature from creating in any fiscal year debts or liabilities in certain

a public question seeking approval of legislation allowing for the issuance of bonds to finance a variety of unrelated facilities:

> Should the "Institutional Construction Bond Act of 1978" which authorizes the State to issue bonds in the amount of $100,000,000.00 for construction and improvement of facilities serving the mentally retarded and mentally ill; for construction of correctional institutions including Trenton State Prison; and for the acquisition and construction of facilities, including facilities to serve blind and handicapped persons and a forensic laboratory for the State Medical Examiner; and to provide means to pay the principal and interest on these bonds, be approved?

> [*Id.* at 203, 403 *A.*2d 437.]

In *Lan*, the plaintiffs attacked the inclusion of "[ ]construction of institutions for the incarcerated, including ... Trenton State Prison ***", with other purposes of institutional construction." *Id.* at 209–10, 403 *A.*2d 437 (citations omitted). Importantly, plaintiffs argued that inclusion of prison construction in the bill prevented voters who favored the use of State funds for the rehabilitation of prisoners rather than for the construction of prisons from supporting the use of State funds for other public facilities, such as libraries and care facilities for the mentally retarded. Accordingly, they asserted that inclusion of these diverse types of facilities in one bill was improvident and violative of the Constitution. *Id.* at 210–11, 403 *A.*2d 437. The statute was challenged in an action filed under the Declaratory Judgment Act and the trial court upheld its constitutional validity. The Appellate Division reversed, 164 *N.J.Super.* 115, 395 *A.*2d 889, and the Supreme Court reinstated the decision of the trial court. The Court rejected this contention, recognizing instead the primacy of the Legislature's powers in crafting public questions from submission to the voters:

> [T]hese questions, however one may view their merits, are for the Legislature and the people to decide, subject only to constitutional bounds. For, as frequently noted by this Court, the prudence, wisdom, good sense or otherwise of the legislative action are not for the Court, if it is only within the Constitution.

> [*Id.* at 211, 403 *A.*2d 437 (citations omitted).]

---

circumstances unless authorized by a "law for some single object or work distinctly specified therein." *N.J. Const.* art. VIII, § 2, ¶ 3. This Constitutional provision is directly implicated in the *Lan* case.

The difficulty of choice, the Court explained, does not project a constitutional infirmity. If a public question has a single purpose, diverse components germane to that purpose may properly be included in a single question. *Id.* at 212, 403 *A.*2d 437.

The Court provided a laundry list of egregious conduct designed to be thwarted by the single object standard. The constitutional purpose is to protect against:

[T]he extreme, the "pernicious," the incongruous, *Johnson v. Harrison*, 47 *Minn.* 575, 50 *N.W.* 923, 924 (Sup.Ct.1894[1]); *Newark v. Mount Pleasant Cemetery Co.*, 58 *N.J.L.* 168, 171 [33 *A.* 396] (E. & A. 1895); the manifestly repugnant, *Behnke [v. New Jersey Highway Authority*, 13 *N.J.* 14, 25, 97 *A.*2d 647 (1953) ]; the palpable contravention of the constitutional command, *Jersey City v. Martin*, 126 *N.J.L.* 353, 363 [19 *A.*2d 40] (E. & A.1941); *Public Serv. Elec. & Gas Co. v. Camden*, 118 *N.J.L.* 245, 250 [192 *A.* 222] (Sup.Ct.1937); fraud or overreaching or misleading of the people, *Howard Sav. Inst. v. Kielb*, 38 *N.J.* 186, 201 [183 *A.*2d 401] (1976); the inadvertent, *Gellert v. State*, 522 *P.*2d 1120, 1122 (Alaska Sup.Ct.1974); the "discordant," *Schwab v. Ariyoshi*, 58 *Haw.* 25, 564 *P.*2d 135, 140 (1977); or "the intermixing in one and the same act [of] such things as have no proper relation to each other," *Grover v. Trustees of Ocean Grove Camp–Meeting Association*, 45 *N.J.L.* 399, 402 (Sup.Ct.1883); or matters which are "uncertain, misleading or deceptive," *State v. Czarnicki*, 124 *N.J.L.* 43, 45 [10 *A.*2d 461] (Sup.Ct.1940).

[*Lan, supra*, 80 *N.J.* at 212, 403 *A.*2d 437.]

Importantly, the Court established the standard to be utilized by trial courts in measuring the "relatedness" (single object rule) against the background of such extremes:

[T]he course of judicial and constitutional history in New Jersey has been to invoke a broad rather than a strict or hyper-technical approach. As for specific constitutional adjurations such as involved herein, the judicial policy has been to construe them liberally with a design not to "embarrass" legislative enactments by an interpretation "whose strictness is unnecessary to the accomplishment of the beneficial purposes" of the constitutional provision.... This in deference to the legislative will and that of the people, so that government and its progress in service to the people would not be hamstrung.

[*Id.* at 212–13, 403 *A.*2d 437 (citations omitted).]

Quoting *Johnson v. Harrison*, 47 *Minn.* 575, 50 *N.W.* 923, 924 (1891), the Court noted that "[a]ll that is required is that the act should not include legislation so incongruous that it could not, by a fair intendment, be considered germane to one general subject.... Neither is it necessary that the connection or relationship should be logical; it is enough that the matters are connected with

and related to a single subject, in popular signification." *Id.* at 215, 403 *A.*2d 437.

Applying the aforementioned standard, the *Lan* Court determined that the various facilities included in the challenged public question were sufficiently related to constitute a single object for constitutional purposes. *Id.* at 216–18, 403 *A.*2d 437.

Despite the clear and unequivocal determination as noted above, in *Lan*, the Court reaffirmed the long-standing principle that every possible presumption in favor of the constitutionality of legislative action must be extended by the courts:

> [E]ven if we entertained a doubt of constitutionality (which we do not), we would be equally bound, by judicial precedents since the earliest days of our nation, to eschew judicial interference with the legislative will. Chief Justice John Marshall indeed counseled the courts to avoid, where at all possible, confrontation with constitutional issues.
>
> . . .
>
> But where, as here, the constitutional issue must be dealt with, every reasonable intendment runs in favor of constitutionality.
>
> [*Id.* at 218, 403 *A.*2d 437 (citing *Jamouneau v. Harner*, 16 *N.J.* 500, 515, 109 *A.*2d 640 (1954)).]

*See also City of Jersey City v. Farmer*, 329 *N.J.Super.* 27, 38, 746 *A.*2d 1018 (App.Div.), *certif. denied*, 165 *N.J.* 135, 754 *A.*2d 1211 (2000); *Holster v. Board of Trustees of Passaic County College*, 59 *N.J.* 60, 66, 279 *A.*2d 798 (1971); *Newark Superior Officers Ass'n v. City of Newark*, 98 *N.J.* 212, 222, 486 *A.*2d 305 (1985); *Paul Kimball Hosp., Inc. v. Brick Township Hosp., Inc.*, 86 *N.J.* 429, 447, 432 *A.*2d 36 (1981).

■ Earlier in this opinion, the court set forth its reasons for rejecting the applicability of the single subject/object rule to the facts set forth herein. Even if Article IX is viewed as imposing a single object standard on proposed constitutional amendments, the public question at issue comports with that standard since "by any fair intendment" the purposes to be served by the present public question are essentially related to each other and possess the requisite germaneness in fulfillment of the general object of the law. *See Lan, supra*, 80 *N.J.* at 216, 403 *A.*2d 437.

The dedication of money in the General Fund for the TTF based on revenue raised by the petroleum products gross receipts tax and based on revenue raised by the sales tax are sufficiently related objects to constitute one proposed amendment to the Constitution. This conclusion is supported by several factors.

First, the text of the proposed amendment makes it abundantly clear that it intends to amend only one existing provision of the Constitution, Article VIII, Section II, paragraph 4. No other provision of the Constitution will change if the voters approve the proposal. The voters, therefore, are not being asked to amend more than one part of the Constitution in a single question. The fact that the one provision will be amended in a fashion that refers to two different taxes hardly changes the fact that only paragraph 4 will be altered by the proposed amendment.

Second, the proposed amendment addresses the dedication of money for deposit in a single fund, the TTF. Thus, all money in the General Fund affected by the proposed amendment will be dedicated to the same purpose, the construction and repair of the State's transportation system, and will go to the same place, the TTF special account. The voters are not being asked in a single question to consider the dedication of funds for multiple, diverse purposes or for numerous special accounts.

Third, the proposed amendment concerns only tax revenue that, absent approval of the amendment, would be deposited in the State's General Fund to be used for any purpose by the Legislature. Once collected by the State, both the petroleum products' gross receipt tax and the sales tax are placed in the General Fund and are available for appropriation for any governmental purpose. The proposed amendment asks the voters if they wish for more money equivalent to a portion of those proceeds to be dedicated to the TTF. No non-tax source of revenue, such as through the accumulation of indebtedness, is the subject of the proposed amendment. Neither are the voters asked the change the designated use of funds that were previously allotted for another purpose.

Plaintiffs' contention that the petroleum products gross receipts tax and the sales tax are so different from one another as to warrant the submission of two amendments is without merit. In the absence of the proposed amendment, revenue from both taxes will be deposited in the State's General Fund and will be available for any use. The two taxes are not now dedicated to different purposes. Both are part of the same revenue stream into the General Fund. The fact that the taxes are imposed on different types of transactions does not offend any Constitutional principles. The incidence and rate of taxation are not subjects of the amendment. The proposed constitutional revision concerns the use of the funds raised by the two taxes, not how the taxes will be imposed. Revenues from both taxes are deposited in the same unrestricted General Fund. The single question posed to the voters is whether money in that fund should be dedicated to a specific purpose and in the amounts approved by the Legislature.

Additionally, plaintiffs' contention that the two taxes have a sufficiently different relationship to the objectives of the TTF so as to require the submission of two public question must fail. The Legislature is free to expend non-dedicated monies in the General Fund for any purpose, regardless of the source from which they arose. Therefore, logic dictates that the Legislature possesses the authority to propose an amendment to the Constitution dedicating revenue from any combination of taxes to any purpose regardless of the transactions that give rise to the taxes.

Finally, there is nothing in the Constitution or elsewhere that requires that State expenditures for a particular purpose arise from revenue related to that purpose. It is for the Legislature to determine which taxes, and what portion thereof, should be utilized to fund a particular program. Here, the Legislature decided that the TTF should be funded through the petroleum products gross receipts tax and the sales and use tax. The Constitution allocates to the voters the opportunity to decide whether this plan is acceptable. Voters may not compel a separate vote on each element of the Legislature's funding proposal based on a theory

that one type of tax may be viewed as more or less related to the ultimate recipient of funding than another.

Thus, the court finds that even if the single subject/single object rule applied determinatively to Article IX, the proposed amendment to be submitted to the public in the form of one public question would not offend that doctrine. Accordingly, plaintiffs' application for permanent injunctive relief is denied and the complaint is dismissed in its entirety.