776 A.2d 754

JUDITH CAMBRIA AND THE LEAGUE OF WOMEN VOTERS OF NEW JERSEY, INC., PLAINTIFFS–APPELLANTS, v. DEFOREST B. SOARIES, SECRETARY OF STATE OF THE STATE OF NEW JERSEY AND JOHN J. FARMER, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS–RESPONDENTS.

Argued October 23, 2000—Decided October 25, 2000—Filed July 19, 2001.

4

*Douglas S. Eakeley* argued the cause for appellants (*Lowenstein Sandler*, attorneys; *Deborah A. Silodor* on the briefs).

*Patrick DeAlmeida*, Deputy Attorney General, argued the cause for respondents (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney; *Nancy Kaplen*, Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

PORITZ, C.J.

This case involves a provision of the New Jersey Constitution that establishes the mechanism by which the Constitution may be amended. We have been asked for the first time to interpret the requirement set forth in Article IX, Paragraph 5 that the Legislature must present "more than one amendment" to the people "separately and distinctly." In specific, plaintiffs contend that Article IX, Paragraph 5 prohibits the dedication of two types of state revenues to the Transportation Trust Fund in one amendment. We hold that under the standard set forth in this opinion

the separate vote requirement of Article IX is not violated by an amendment so structured.

## I

On June 30, 2000, Concurrent Resolution No. 1 (the Resolution) was filed with Secretary of State Deforest B. Soaries for certification and submission to the Division of Elections. The Resolution had been approved overwhelmingly by both the Senate (thirty-seven to one) and the Assembly (seventy-eight to one) just days earlier on June 26 and June 29. It called for a proposed amendment to Article VIII, Section 2, Paragraph 4 of the New Jersey Constitution to be placed on the November 2, 2000 ballot. That provision, in its pre-amendment form, stated:

There shall be credited to a special account in the General Fund for the State fiscal year in which the amendment to this paragraph is approved by the voters an amount equivalent to the revenue derived from $0.025 per gallon from the tax imposed on the sale of motor fuels pursuant to chapter 39 of Title 54 of the Revised Statutes, and an amount equivalent to the revenue derived from $0.07 per gallon from the tax shall be credited to the account in each of the first two State fiscal years commencing after the approval of the amendment to this paragraph by the voters, and an amount equivalent to the revenue derived from $0.08 per gallon from the tax shall be credited to the account in the third State fiscal year commencing after the approval of the amendment to this paragraph by the voters, and an amount equivalent to the revenue derived from $0.09 per gallon from the tax shall be credited to the account in the fourth State fiscal year commencing after the approval of the amendment to this paragraph by the voters and annually thereafter; provided, however, the dedication and use of such revenues as provided in this paragraph shall be subject and subordinate to (a) all appropriations of revenues from such taxes made by laws enacted on or before December 6, 1984 in accordance with Article VIII, Section II, paragraph 3 of the State Constitution in order to provide the ways and means to pay the principal and interest on bonds of the State presently outstanding or authorized to be issued under such laws or (b) any other use of those revenues enacted into law on or before December 6, 1984. These amounts shall be appropriated from time to time by the Legislature, only for the purposes of paying or financing the cost of planning, acquisition, engineering, construction, reconstruction, repair and rehabilitation of the transportation system in this State and it shall not be competent for the Legislature to borrow, appropriate or use these amounts or any part thereof for any other purpose, under any pretense whatever.

[*N.J. Const.* art. VIII, § 2, ¶ 4 (amended 2000).]

In addition to the 0.025 cents per gallon tax on the sale of motor fuels already constitutionally dedicated to the Transportation Trust Fund under Article VIII, Section 2, Paragraph 4, for use in the construction and repair of the State's transportation system, the amendment proposed the dedication of two new revenue streams for the same purpose: a minimum of $100,000 from the gross receipts tax on the sale of petroleum products in the first year, to be increased to $200,000 in every year thereafter; and a minimum of $80,000 from Sales and Use Tax receipts in the first year, to be increased to $140,000 in the second year, and to $200,000 in every year thereafter. According to the Interpretive Statement to the Resolution, the amount taken from Sales and Use Tax receipts would reflect approximately one-third of the tax collected from the sale of new motor vehicles.

Prior to the final approval of the Resolution by the Assembly, Sandra L. Matsen, President of the League of Women Voters of New Jersey, Inc. (League), and Judith Cambria, the League's Director of Fiscal Policy, wrote to and testified before the Assembly Appropriations Committee, expressing their belief that the Resolution was unconstitutional. They argued that by combining the proposed changes in one question, the Resolution deprived voters of their right under Article IX, Paragraph 5 of the Constitution to approve one change and reject another.

On July 24, 2000, plaintiffs filed a Verified Complaint in Lieu of Prerogative Writs and an Order to Show Cause with Temporary Restraints in the Law Division. Plaintiffs sought both a declaratory judgment that the Resolution violated Article IX, Paragraph 5, and a permanent injunction enjoining Secretary of State Soaries and Attorney General John J. Farmer, Jr. (defendants) from taking action as necessary to have the Resolution placed on the November 2000 general election ballot.[1] Defendants responded

---

[1] Pursuant to Executive Reorganization Plan No. 004–1998, the statutory electoral duties of the Secretary of State under Title 19 of the New Jersey Statutes have been transferred to the Department of Law and Public Safety and

on July 31, 2000 with a Notice of Cross Motion to Dismiss the Verified Complaint for failure to state a claim upon which relief can be granted. By decision dated August 4, 2000, the trial court denied plaintiffs' request for injunctive relief and granted defendants' motion to dismiss. *Cambria v. Soaries*, 334 *N.J.Super.* 488, 759 *A.*2d 1256 (Law Div.2000). The Appellate Division affirmed on October 10, 2000,[2] *Cambria v. Soaries*, 334 *N.J.Super.* 437, 759 *A.*2d 1227 (2000). On October 11, 2000, plaintiffs filed a notice of appeal as of right with this Court. *R.* 2:2–1(a)(1). After hearing oral argument on October 24, 2000, we issued an order affirming the Appellate Division without opinion because of the need for an immediate response in light of the imminent general election. The Resolution was submitted to the voters on November 2, 2000, and was approved. In this opinion we now explain the basis for our earlier order of affirmance.

## II

The paragraphs of Article IX of the New Jersey Constitution control the process by which the Constitution may be modified. That process begins in the Legislature, which is authorized by Paragraph 1 of Article IX to propose "[a]ny specific amendment or amendments" and to submit the proposal to the general public following approval by three-fifths of the members of each house.[3] The Legislature is required to enter the proposal and the votes thereon in the journal of each house, *N.J. Const.* art. IX, ¶ 2, and to publish it prior to submission to the public, *N.J. Const.* art. IX,

---

are now carried out under the direction of the Attorney General. *See* 30 *N.J.R.* 1351(a).

[2] Prior to issuance of the Appellate Division decision, plaintiffs petitioned this Court for direct certification pursuant to *Rule* 2:12–2. On October 13, 2000, after the decision issued, this Court dismissed the petition as moot.

[3] When the proposed amendment is approved by a majority only, it is referred for consideration in the next legislative year and, if approved by a majority in both houses on reconsideration, it is then submitted to the people. *N.J. Const.* art. IX, ¶ 1.

¶ 3.  Paragraph 4 authorizes the Legislature to determine the "manner and form" of proposed amendments, whereas Paragraph 5 provides for the submission of "more than one amendment . . . in such manner and form that the people may vote for or against each amendment separately and distinctly."  Lastly, Paragraphs 6 and 7 address when approved amendments are effective and when rejected amendments may be resubmitted.

At issue in this case is the proper interpretation of the language "separately and distinctly" found in Article IX, Paragraph 5, and known generally as the separate vote requirement.  Plaintiffs contend that by using the phrase "specific amendment or amendments" in Paragraph 1, the framers of the Constitution intended "amendment" to be synonymous with "change."  It follows, plaintiffs argue, that multiple changes can be effectuated only by means of multiple amendments, each submitted for public approval, each to be voted on "separately and distinctly."  Therefore, the Resolution violates the separate vote requirement of Paragraph 5 because it makes more than one change to the Constitution but allows for only one vote.

Defendants dispute that any special significance should be attached to the phrase "specific amendment or amendments" in Article IX, Paragraph 1.  In their view, that provision merely imposes a requirement on the Legislature to propose definite changes to the Constitution as opposed to general, vague modifications.  Regarding the meaning of the separate vote requirement in Paragraph 5, defendants suggest that the caselaw interpreting the "single object" language found in Article IV, Section 7, Paragraph 4 and Article VIII, Section 2, Paragraph 3, is instructive.  That language traditionally has been given a broad reading by this Court, requiring only relatedness between the various components of a single statute.  According to defendants, the Resolution would easily pass such a test because the tax sources in the Resolution are related to the Transportation Trust Fund by virtue of the dedication of monies from those sources to the Fund.

### III

Any inquiry to determine the meaning of a constitutional provision necessarily begins with the specific language of that provision. "If the language is clear and unambiguous, the words used must be given their plain meaning." *State v. Trump Hotels & Casino Resorts, Inc.,* 160 *N.J.* 505, 527, 734 *A.*2d 1160 (1999). When the language is "susceptible to more than one interpretation," we consider other related provisions of the Constitution as well as "sources beyond the instrument itself to ascertain its intent and purpose." *Id.* at 527–28, 734 *A.*2d 1160. We apply that two-step analysis here.

Article IX, Paragraph 5 states:

If more than one amendment be submitted, they shall be submitted in such manner and form that the people may vote for or against each amendment separately and distinctly.

That Article IX, Paragraph 5 is subject to multiple, reasonable interpretations is evident from the opinions below. On initial review, the trial court held that the provision imposes a procedural requirement only on the amendment process. *Cambria, supra,* 334 *N.J.Super.* at 498, 759 *A.*2d 1256. According to that court, the Constitution forbids the submission of multiple proposed amendments in the form of a single amendment; however, if only one amendment is proposed by the Legislature, the content of that amendment cannot be questioned by the courts. *Id.* at 500, 759 *A.*2d 1256. Put another way, once the Legislature chooses to vote on the proposal as one amendment, adherence to the separation of powers doctrine requires the court to stay its hand. *Ibid.* The Appellate Division agreed that the proposal as framed is valid, but disagreed that the separate and distinct language is procedural in nature. In the view of the appellate court, the Legislature may submit an amendment containing multiple parts whenever it makes an "overall change" to a provision of the Constitution. *Cambria, supra,* 334 *N.J.Super.* at 441, 759 *A.*2d 1227. The panel observed that

because Article IX, Paragraph 5 does not even impose a single object standard upon proposed amendments, which is easily satisfied by this amendment, *see New*

*Jersey Association on Correction v. Lan,* 80 *N.J.* 199, 403 *A.*2d 437 (1979), the proposed amendment stands as formulated by the Legislature and may be submitted to the people for their vote.

[*Ibid.*]

The parties also disagree about the meaning of Article IX, Paragraph 5, although they concur with the Appellate Division's conclusion that the single object language found elsewhere in the Constitution is not equivalent to the separate vote requirement of Paragraph 5. We turn first, then, to the single object rule so as to determine at the outset whether that rule is helpful to our consideration of Article IX, Paragraph 5.

## A

The single object rule appears in Article IV, Section 7, Paragraph 4[4] and Article VIII, Section 2, Paragraph 3[5] of the Constitution. We had the opportunity to discuss both Articles in *New Jersey Ass'n on Correction v. Lan,* 80 *N.J.* 199, 403 *A.*2d 437 (1979). That case involved a bond proposal submitted to the public pursuant to Article VIII, Section 2, Paragraph 3, which requires public approval for the creation of new state debt. The proposal authorized the State to issue bonds in order to fund the construction of various facilities, including the Trenton State Prison and institutions for mentally ill and mentally retarded persons. Although the Association on Correction challenged the proposal under Article IV, Section 7, Paragraph 2, the Court understood

---

[4] Article IV, Section 7, Paragraph 4 states, in relevant part:

To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title.

[5] Article VIII, Section 2, Paragraph 3 states, in relevant part:

The Legislature shall not, in any manner, create in any fiscal year a debt or debts, liability or liabilities of the State, which together with any previous debts or liabilities shall exceed at any time one per centum of the total amount appropriated by the general appropriation law for that fiscal year, unless the same shall be authorized by a law for some single object or work distinctly specified therein.

Article VIII also to be implicated because the "one object" requirement of Article IV was of "like import" to the "single object" requirement of Article VIII. *See id.* at 204–05, 403 *A.*2d 437. The question under both was "whether [the different building] projects constituted a single object in the intendment of the Constitution." *Id.* at 205, 403 *A.*2d 437.

■■■ We explained in *Lan* that the purpose of the single object rule is to ensure relatedness among the components of legislative acts:

'All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject. The subject may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject, and not several. The connection or relationship of several matters, such as will render them germane to one subject and to each other, can be of various kinds, as, for example, of means to ends, of different subdivisions of the same subject, or that all are designed for the same purpose, or that both are designated by the same term. Neither is it necessary that the connection or relationship should be logical; it is enough that the matters are connected with and related to a single subject, in popular signification.'

[*Id.* at 215, 403 *A.*2d 437 (quoting *Johnson v. Harrison,* 47 *Minn.* 575, 50 *N.W.* 923, 924 (1891)).]

*See also Bucino v. Malone,* 12 *N.J.* 330, 343–44, 96 *A.*2d 669 (1953) (holding that single object rule of Article IV, Section 7, Paragraph 4 is not violated when act's title "embrace[s] but one general purpose" and "[a]ll provisions of the act are in furtherance of this purpose"). The single object rule, we stated, is designed to protect against

the extreme, the 'pernicious,' the incongruous; the manifestly repugnant; the palpable contravention of the constitutional command; fraud or overreaching or misleading of the people; the inadvertent; the 'discordant;' or 'the intermixing in one and the same act [of] such things as have no proper relation to each other;' or matters which are 'uncertain, misleading or deceptive.'

[*Lan, supra,* 80 *N.J.* at 212, 403 *A.*2d 437 (citations omitted).]

*See also Behnke v. New Jersey Highway Auth.,* 13 *N.J.* 14, 32, 97 *A.*2d 647 (1953) (stating that purpose of single object clause in Article VIII, Section 2, Paragraph 3 is to ensure that "money thus provided cannot be expended for one purpose under the guise of another ... for the protection of the State's revenue and credit as

well as for an understanding appraisement of the project by the electorate").

In sum, to survive a challenge based on the single object rule, the State need show only that the individual parts of a statute or of a bond issue meet the "relatedness" test. We concluded that the bond proposal in *Lan* was constitutional because its purpose was to build facilities for those who were "in custody or other circumstances [and so had] need for State care, protection and rehabilitation," all of which were related through that purpose. *Lan, supra,* 80 *N.J.* at 216, 403 *A.*2d 437. *See also Parking Auth. of Atlantic City v. Bd. of Chosen Freeholders,* 180 *N.J.Super.* 282, 300, 434 *A.*2d 676 (Law Div.1981) (sustaining act establishing public agency to implement public transportation system and ordering dissolution of pre-existing municipal parking authorities under Article IV, Section 7, Paragraph 4 "one object" requirement because component parts of act served common purpose to create one agency with powers that do not overlap those of other agencies); *State v. Churchdale Leasing, Inc.,* 115 *N.J.* 83, 111, 557 *A.*2d 277 (1989) (holding New Jersey Transportation Trust Fund Authority Act constitutional under Article IV, Section 7, Paragraph 4 because "[a]lthough diverse, the Act's provisions further its express purpose: the preservation of a sound, balanced transportation system through the provision of a stable source of funding").

## B

Neither the courts below nor the parties in the case dispute that the Resolution meets the single object test. Although the Resolution makes discrete substantive changes to the Constitution, only one provision of the Constitution is affected. Moreover, each change furthers the same purpose: to dedicate additional monies to the Transportation Trust Fund thereby giving it greater stability in years to come. Finally, the degree of relatedness between the sources of funding and the Trust Fund easily meets the single object threshold: taxes on motor fuels and

petroleum products are obviously related and, as the Interpretive Statement to the Resolution makes clear, the amount of dedicated revenue from the Sales and Use Tax under the Amendment is roughly equal to one-third of the amount collected from the sale of new motor vehicles, also a related source.

The question we must answer therefore is whether Article IX, Paragraph 5 requires more than the relatedness test of the single object rule. There are some indications of the framers' intent regarding that question in the history of the provision itself.

## C

Article IX of the Constitution of 1844 contains language nearly identical to that of Article IX, Paragraphs 1 and 5 of the 1947 Constitution.[6] During the Constitutional Convention of 1844, a conversation of some relevance to an understanding of that language took place:

> Mr. Ryerson moved to amend by adding that each amendment submitted, should embrace but one subject. The legislature might submit a popular amendment, and connect it with an unpopular one; and both might be voted down in consequence.
>
> Mr. R.S. Kennedy *thought the object of the mover was already reached by the language of the report.* If the legislature should disobey that, they might disobey the restrictions proposed by Mr. R.
>
> . . . .
>
> Mr. Vroom proposed a modification of Mr. Ryerson's motion, which that gentleman accepted. The amendment was not agreed to.
>
> [*Proceedings of the N.J. State Constitutional Convention of 1844* at 56 (emphasis added).]

We take from the quoted exchange that the framers expected Article IX to encompass the requirements of the single object provisions.

---

6 Article IX of the 1844 Constitution states, in relevant part, that:

Any specific amendment or amendments to the constitution may be proposed in the senate or general assembly ... provided, that if more than one amendment be submitted, they shall be submitted in such manner and form that the people may vote for, or against each amendment separately and distinctly.

There is also documentary evidence from the Constitutional Convention of 1947 suggesting that the separate vote requirement is not as narrow as plaintiffs claim it to be. As noted above, plaintiffs argue that the framers intended the word "amendment" in Article IX to mean "change," such that the Legislature cannot propose more than one change to the Constitution unless each change is submitted separately to the public. During the proceedings in 1947, however, a letter was sent to the Committee on Rights, Privileges, Amendments, and Miscellaneous Provisions proposing, among other things, that Article IX explicitly refer to "change" rather than "amendment." 3 *Proceedings of the State of New Jersey Constitutional Convention of 1947* at 313–15. The writer apparently believed his proposed version of Article IX would ensure that the Legislature could not usurp the power of the people to amend the Constitution. *Ibid.* Since his suggestion was not accepted, it is reasonable to conclude that the convention members did not intend the separate vote requirement to be read quite so narrowly.

## IV

With that constitutional history in mind, we turn now to cases from other states that have interpreted similar provisions in their own constitutions. *Planned Parenthood of Cent. New Jersey v. Farmer*, 165 *N.J.* 609, 627, 762 *A.*2d 620 (2000) (reviewing caselaw from other jurisdictions for guidance on whether parental notification law violates equal protection under State Constitution); *Neptune T.V. & Appliance Serv., Inc. v. Litton Sys., Inc.*, 190 *N.J.Super.* 153, 161, 462 *A.*2d 595 (App.Div.1983) (explaining that when statute and New Jersey caselaw fail to define phrase courts may consider understandings of other jurisdictions that have similarly-worded laws). At least twenty-nine states currently have separate vote requirements to amend their constitutions.[7] We note with

---

[7] *Ariz. Const.* art. XXI, § 1; *Ark. Const.* art. XIX, § 22; *Cal. Const.* art. XVIII, § 1; *Colo. Const.* art. XIX, § 2; *Ga. Const.* art. X, § 1, ¶ 2; *Haw. Const.* art. XVII,

interest that there are wide variances in the way other state courts have interpreted those requirements.

At one end of the spectrum, we find a simple rational basis test wherein the court pays great deference to the legislature's decision that the different parts of the proposed amendment are appropriate to be presented together, and asks only that the parts be rationally related to each other. Thus, in *Fugina v. Donovan*, the court sustained a single legislative proposal that would allow legislators to extend their session, serve as notaries, and seek election to other offices because "[w]hile the logical relationship between the propositions is somewhat remote, and perhaps as remote as is permissible, yet it exists; and the relative importance of the propositions makes it not unreasonable that they be joined." 259 *Minn.* 35, 104 *N.W.*2d 911, 915 (1960). In the same vein, several states have adopted a somewhat stricter, but nonetheless deferential, version of the single object approach. Those states do not distinguish between the single object and separate vote requirements. *See, e.g., Missourians to Protect the Initiative Process v. Blunt*, 799 *S.W.*2d 824, 830–31 (Mo.1990) (stating amendment may alter "several articles or sections of the Constitution, if all are germane to a single controlling purpose") (emphasis omitted); *Milwaukee Alliance Against Racist and Political Repression v. Elections Bd. of the State of Wisconsin*, 106 *Wis.*2d 593, 317 *N.W.*2d 420, 425 (1982) (holding that several changes to administration of bail were properly presented together because it is within legislative discretion to submit distinct propositions as one amendment if they relate to same subject and are designed to accomplish single purpose); *Carter v. Burson*, 230 *Ga.* 511, 198

§ 3; *Idaho Const.* art. XX, § 2; *Ind. Const.* art. XVI, § 2; *Iowa Const.* art. X, § 2; *Kan. Const.* art. XIV, § 1; *Ky. Const.* § 256; *La. Const.* art. XIII, § 1; *Md. Const.* art. XIV, § 1; *Minn. Const.* art. IX, § 1; *Miss. Const.* art. XV, § 273; *Mo. Const.* art. XII, § 2(b); *Mont. Const.* art. XIV, § 11; *Neb. Const.* art. XVI, § 1; *N.J. Const.* art. IX, ¶ 5; *N.M. Const.* art. XIX, § 1; *Ohio Const.* art. XVI, § 1; *Okla. Const.* art. XXIV, § 1; *Or. Const.* art. XVII, § 1; *Pa. Const.* art. XI, § 1; *Tenn. Const.* art. XI, § 3; *Wash. Const.* art. XXIII, § 1; *W. Va. Const.* art. XIV, § 2; *Wis. Const.* art. XII, § 1; and *Wyo. Const.* art. XX, § 2.

*S.E.*2d 151, 156 (1973) (holding that several modifications to procedure for removal of State Treasurer did not violate constitution because "all of the parts ... of the constitutional amendment are germane to the accomplishment of a single objective"); *State ex rel. Roahrig v. Brown,* 30 *Ohio St.*2d 82, 282 *N.E.*2d 584, 586 (1972) (holding invalid proposed amendment changing administration of General Assembly, changing election and duties of executive branch members, and repealing prohibition against convicted felons holding public office, because "each of its subjects ... [failed to bear] some reasonable relationship to a single general object or purpose").

A considerably more restricted version of the separate vote requirement insists on a single subject and parts so interdependent that they constitute a whole not able to be separated. In *Kerby v. Luhrs,* for example, the Arizona Supreme Court held that a proposed amendment addressing the taxation of copper mines and public utilities, and also establishing a tax commission, violated the state constitution. 44 *Ariz.* 208, 36 *P.*2d 549, 554 (1934). The proposal was rejected because

the different changes contained in the proposed amendment [did not] all cover matters necessary to be dealt with in some manner, in order that the Constitution, as amended, shall constitute a consistent and workable whole on the general topic embraced in that part which is amended, and if, logically speaking, they should stand or fall as a whole, then there is but one amendment submitted.

[*Ibid.*]

Similarly, the Utah Supreme Court invalidated a proposal to give wartime emergency powers to the legislature that would provide for the temporary succession of the powers and duties of public officers and allow the legislature to ignore provisions of the constitution, because one part was not "dependent on [the other nor] ... necessary to ensure the workability of the other, ... [nor presented in such way that] if the electorate were given a choice, it might have approved ... [o]ne, and disapproved the other." *Lee v. State,* 13 *Utah* 2d 15, 367 *P.*2d 861, 864 (1962). *See also Farris v. Munro,* 99 *Wash.*2d 326, 662 *P.*2d 821, 825 (1983) (en banc) (holding that proposed amendment relating to state lottery did not constitute multiple amendments, even though it kept intact

pre-existing restrictions on divorce, because it did not "relate to more than one subject [or have] ... two distinct and separate purposes not dependent upon or connected with each other") (internal citations omitted).

More recently, in *Armatta v. Kitzhaber*, the Oregon Supreme Court decided that the state constitution's "separate-vote requirement, [which] applies *only* to constitutional amendments, ... imposes a *narrower* requirement than does the single-subject requirement." 327 *Or.* 250, 959 *P.*2d 49, 63 (1998). The court stated that "[s]uch a reading ... makes sense, because the act of amending the *constitution* is significantly different from enacting or amending *legislation*," *id.* at 63, concluding:

> Indeed, because the separate-vote requirement is concerned *only* with a change to the fundamental law, the notion that the people should be able to vote separately upon each separate amendment should come as no surprise. In short, the requirement serves as a safeguard that is fundamental to the concept of a constitution.
>
> [*Ibid.*]

In order to determine whether the proposal before it violated the separate-vote requirement, the court asked

> whether, if adopted, the proposal would make two or more changes to the constitution that are substantive and that are not closely related. If the proposal would effect two or more changes that are substantive and not closely related, the proposal violates the separate vote requirement.
>
> [*Id.* at 64.]

In essence, because of the heightened importance attached to modifications of organic law, the Oregon court adopted a somewhat more restrictive version of the single object test. Under that test, the court rejected a proposal that dealt with crime victims' rights, six different individual rights, and juror qualifications, as having too many disparate and unrelated parts. *Id.* at 68. *See also Marshall v. State*, 293 *Mont.* 274, 975 *P.*2d 325, 331 (1999) (citing with approval *Armatta, supra*, 959 *P.*2d at 63–64).[8]

---

[8] By way of contrast, the Pennsylvania Supreme Court has held that the Legislature must propose only discrete, straightforward changes to the constitution. When multiple changes are required, no matter how interrelated, "each

## V

Although the opinions of other courts vary widely in their approach to both the single object and the separate vote requirements found in many state constitutions, there is general recognition that the primary goal underlying those requirements is the prevention of "logrolling." Logrolling is the legislative practice of combining unrelated popular and unpopular proposals because voters will support the entire proposal in order to secure the passage of the part they favor. *Kerby, supra,* 36 *P.*2d at 551–52. Some courts have also expressed the view that the separate vote language is meant to prevent submission of an amendment that contains unrelated changes and is therefore misleading or confusing. *See, e.g., Fugina, supra,* 104 *N.W.*2d at 914 (stating that one objective of separate vote requirement is to "prevent imposition upon or deceit of the public by the presentation of a proposal which is misleading or the effect of which is concealed or not readily understandable"). In our view, both goals are helpful to an understanding of Article IX, Paragraph 5 of the New Jersey Constitution.

Amendments to an organic body of law are a serious matter. The New Jersey Constitution contains our most fundamental ideas about the type of government we want to have and how it should function, and the relationship between that government and the people. The framers of the 1947 Constitution provided for amendments to our organic law by establishing a process that begins in the Legislature but includes a public hearing and submission to the public "in such manner and form that [the members] may vote for or against each amendment separately and distinctly." *N.J. Const.* art. IX, ¶ 5. The process is appropriately more complex than simple lawmaking and, most important, requires participation

---

modification, deletion, or addition [must be] submitted to the voters as a separate question." *Pennsylvania Prison Soc. v. Commonwealth,* 727 A.2d 632, 635 (1999).

by New Jersey voters. Ultimately, it is the voters who will decide whether our Constitution should be modified.

Yet, the provisions of Article IX, Paragraph 5, must be interpreted pragmatically. The Legislature begins the process with a proposed amendment that represents the considered judgment of two-thirds of its members that year (or a majority of its members in two successive years). An excessively narrow reading of the separate vote requirement could result in voters having to consider multiple related amendments without fully understanding the relationship between them. Such fragmentation presents the distinct possibility that only portions of a multi-faceted proposal will gain approval, thus rendering the amendment impractical. *Korte v. Bayless,* 199 *Ariz.* 173, 16 *P.*3d 200, 204–05 (2001). Yet, as many courts have pointed out, the combination of disparate subjects in one amendment can be equally confusing.

We adopt today the formulation laid out by the Oregon Supreme Court in *Armatta, supra,* 959 *P.*2d at 64. We believe that court's approach comports with the constitutional history of Article IX, Paragraph 5 because it incorporates the single object test, and because it recognizes the seriousness of amending a constitution by requiring a closer examination of the relationship between the parts of a proposed amendment than does the single object test. Put simply, to meet the separate vote requirement of the New Jersey Constitution, any proposed amendment must not make two or more changes to the constitution unless they are closely related to one another. Under that approach, the amendment challenged by plaintiffs does not violate the separate vote requirement of our Constitution. As noted earlier, the amendment effects two discrete changes by the dedication of two new revenue streams to the Transportation Trust Fund. Both new sources of revenue serve the same purpose, to provide stability to the Fund by allocating additional monies for the construction and repair of the State's transportation system through a constitutional dedication. And, the new revenues are derived from taxes on products related to the transportation system, *i.e.,* the sale of

petroleum products and the sale of motor vehicles. We already have determined that the component parts of· this amendment meet the single object test; we hold, also, that the amendment as structured constitutes a reasonably integrated whole in which the parts are closely related to one another.

## VI

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.